**IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA**

| | | |
|---|---|---|
| CATHOLIC HIGH SCHOOLS OF THE DIOCESE OF PITTSBURGH, INC., et al., | ) ) | No. 2:21-cv-1808-RJC |
| | ) | |
| Plaintiffs, | ) | |
| | ) | Judge Robert J. Colville |
| vs. | ) | |
| | ) | |
| FEDERATION OF PITTSBURGH DIOCESAN TEACHERS, | ) ) | |
| | ) | |
| Defendant. | ) | |
| | ) | |

**<u>MEMORANDUM OPINION</u>**

Robert J. Colville, United States District Judge.

      Plaintiffs Catholic High Schools of the Diocese of Pittsburgh, Inc. and Seton LaSalle High School, Inc. brought this action against Defendant Federation of Pittsburgh Diocesan Teachers to vacate an arbitration award entered pursuant to a collective bargaining agreement ("CBA") between the parties.  The arbitration award would require Plaintiffs to reinstate a teacher who has been suspended pending an investigation into sexual misconduct allegations since February 2021. Having sought its vacatur, Plaintiffs have not yet complied with the award.  Defendant filed a motion seeking a preliminary injunction ordering Plaintiffs to restore the suspended teacher to his prior teaching position.  *See* Mot. for Prelim. Inj. (ECF No. 18).  Because Defendant has failed to meet its burden to show that it is entitled to a preliminary injunction, that motion will be denied.

## I.      BACKGROUND

### A.      Factual Background[1]

Plaintiff Catholic High Schools is a consortium of eight Catholic high schools in the Pittsburgh area that all operate under the Roman Catholic Diocese of Pittsburgh.  Award at 2. Plaintiff Seton LaSalle is one of those eight schools.  *Id.*  Defendant Federation is a labor union that represents teachers and other employees at Catholic High Schools' constituent schools, including Seton Lasalle.  *Id.*

Catholic High Schools and Defendant have a CBA that includes several provisions respecting the discipline of teachers and other union members.  *Id.*  Section 3.3 of the CBA vests "[t]he right to hire, suspend, discharge, or otherwise discipline a teacher for violation of rules or just cause" in the high schools themselves, according to their own policies.  *Id.* at 9–10.  Section 3.4 of the CBA permits high schools to suspend teachers to protect the school or its students:

> In certain situations, the welfare of the students or the integrity of the High School may require the suspension of a teacher or employee.  In such cases it will be the prerogative of the High School, after consultation with the Superintendent and Federation, to decide whether suspension with or without pay is necessary or appropriate.  The decision of the High School will be final pending the completion of any grievance procedure pursued on the merits.

*Id.* at 10.  Section 10.4 permits the high schools to discharge teachers "at any time for violation of rules or for just cause, subject to the provisions of [the CBA]."  *Id.* at 10.

Article 6 of the CBA creates a grievance procedure by which the parties are to settle disputes.  *Id.*  That grievance procedure requires the parties to submit their disputes to an arbitrator.

---

[1]      Defendant submitted no affidavits and attached only the arbitration award to its motion.  *See* Mot. for Prelim. Inj., Ex. A (ECF No. 18) ("Award").  An identical copy of the arbitration award is attached to Plaintiffs' complaint. *See* Compl. and Mot. to Vacate Arbitration Award, Ex. 4 (ECF No. 1).  "Findings of fact and inferences to be drawn therefrom are the exclusive province of the arbitrator." *Citgo Asphault Refining Co. v. Paper, Allied-Indus., Chemical & Energy Workers Int'l Union Local No. 2-991*, 385 F.3d 809, 816 (3d Cir. 2004).  Accordingly, for purposes of resolving this motion, the Court looks to the factual findings made by the arbitrator.

However, Section 6.16 of the CBA constrains the arbitrator's authority: "The arbitrator shall have no authority to render any decision which adds to, conflicts with or alters any provision of the [CBA]." *Id.* at 10.

"Grievant" is a math teacher at Seton Lasalle. *Id.* at 2–3. He previously taught at St. Bernard School from 2003 until 2011 and then at Northside Catholic from 2013 until 2015. *Id.* at 2. He transferred to Seton LaSalle in 2015. *Id.*

In the summer of 2018, Seton LaSalle's principal became aware of a Facebook post by a former student of Grievant claiming that he had been sexually abused by Grievant while at St. Bernard. *Id.* The principal and associate principal confronted Grievant, who denied the accusations. *Id.* The former student and the student's family refused requests to discuss the accusation made by members of the Diocese of Pittsburgh and staff at St. Bernard. *Id.* Despite the accusation, Grievant was permitted to resume teaching when classes began in the fall of 2018. *Id.*

That October, Allegheny County detectives began investigating the accusation against Grievant. *Id.* When Seton LaSalle's principal learned of the investigation, Grievant was placed on a suspension pending its outcome. *Id.* The investigation was closed in November of the same year when the District Attorney found that the case "lacked prosecutorial merit." *Id.* Grievant was returned to teaching shortly thereafter. *Id.*

In March 2019, the same accuser filed a civil complaint in the Allegheny County Court of Common Pleas against John Doe, St. Bernard School, and the Roman Catholic Diocese of Pittsburgh alleging sexual assault by John Doe. *Id.* at 3. In August 2020, a second accuser filed a complaint in the same court against the same defendants, alleging similar conduct. *Id.* According to the arbitrator, Plaintiffs learned of each of these complaints against Grievant—the accused

3

"John Doe"—around or shortly after the filing of each complaint.  *Id.*  Nevertheless, Grievant was permitted to continue teaching at Seton LaSalle.  *Id.*

On February 16, 2021, following a social media post addressed to Seton LaSalle by Gemma Hoskins[2] highlighting the two complaints, Seton LaSalle suspended Grievant (with full pay and benefits) pending an investigation by the Diocese.  *Id.* at 3–4.  Counsel for the Union and the school engaged in a months-long back-and-forth regarding the status of the investigation.  *See id.* at 4–8.  On March 26, 2021, the Union sent a formal grievance to counsel for Catholic High Schools.  *Id.* at 4.  Catholic High Schools responded on April 16.  *Id.* at 5.

The Diocese's investigation progressed, and Grievant was interviewed by its investigators on May 19.  *Id.* at 8.  The accuser who filed the first complaint was interviewed in late July or early August.  *Id.*  Meanwhile, Defendant sought information on the progress of the Diocese's investigation.  *Id.*  Receiving no response, on August 4 Defendant requested a panel of arbitrators from the American Arbitration Association.  *Id.*

The parties selected David Breen as their arbitrator.  In October, Defendant advised Catholic High Schools that the Allegheny County District Attorney had closed an investigation into the second accuser's allegations.  *Id.*  Defendant requested that Grievant be reinstated.  *Id.*  By way of response, outside counsel for Catholic High Schools informed Defendant that the Diocese had a preliminary report from its investigator but that the report was privileged.  *Id.*  On October 22, Arbitrator Breen held a hearing.  *Id.*

Arbitrator Breen reviewed the provisions of the CBA and found that, under these circumstances, Catholic High Schools had violated the CBA.  According to Breen, Catholic High Schools should have known that Grievant had been identified in the complaint long before the

---

[2]     Hoskins' Facebook post, quoted by the arbitrator, identifies her as the "1992 Maryland Teacher of the Year" and associates her with "The Keepers," a Netflix production.  Award at 3.

4

Facebook post by Gemma Hoskins.  *Id.* at 12.  Arbitrator Breen found it "clear that **but for** Hoskins['] threat . . . [Grievant] would still be teaching in the classroom."  *Id.* at 13 (emphasis in original).

Arbitrator Breen found convincing Defendant's argument that Catholic High Schools had violated the CBA because its investigation had taken too long.  Arbitrator Breen interpreted Section 3.4 of the CBA, which gives the high schools power to suspend teachers, "in conjunction with the just cause provisions" in Sections 3.3 and 10.4 of the CBA.  *Id.*  The parties had not expressly stated a time limit on suspensions in Section 3.4; however, Arbitrator Breen found that "[b]y not stating a time limit the parties recognized that any arbitrary time limit could be unfair" and that "the particular facts and circumstances of any given case" that should define "the proper contractual length of any investigatory suspension."  *Id.*

According to Arbitrator Breen, Grievant's suspension violated Section 3.4 and the just cause provisions of the CBA because Catholic High Schools had known about the allegations against Grievant but had never been able to provide any evidence substantiating them.  *Id.* at 13–14.  Arbitrator Breen noted that investigations by the District Attorney into the first accuser's allegations in 2018 and the second accuser's allegations in 2021 had each been closed for lack of "prosecutorial merit."  *Id.*  And despite knowing of the accusations against Grievant for years, Seton LaSalle had not moved to suspend him until a minor celebrity highlighted the allegations. *Id.*  Having suspended Grievant for 9 months to investigate without presenting any evidence of wrongdoing, Catholic High Schools had breached the implied terms of the CBA.  *Id.* at 15.  To remedy that breach, Arbitrator Breen ordered that Grievant be returned to work on December 13, 2021 and be allowed to resume teaching when classes began again in January 2022.  *Id.* at 15.

However, Plaintiffs have not complied with that order, and Grievant remains suspended with full pay and benefits.

### B.    Procedural History

Plaintiffs filed this action on December 10, 2021.  *See* Compl. and Mot. to Vacate Arbitration Award (ECF No. 1).  Defendant filed an answer and counterclaim seeking to enforce the arbitral award on December 16, 2021.  *See* Answer and Counterclaim (ECF No. 7).  Defendant filed the instant motion for a preliminary injunction, without a supporting brief or affidavits, on July 15, 2022.  *See* Mot. for Prelim. Inj. (ECF No. 18).  The Court ordered briefing (including an opposition and a reply) on Defendants' motion for a preliminary injunction on July 18, 2022.  *See* Text Order (ECF No. 20).  That briefing was to be completed by August 1.  *Id.*  Plaintiff timely filed a response to the motion for a preliminary injunction and a brief in opposition on July 25, 2022.  *See* Pls.' Resp. to Def.'s Mot. for Prelim. Inj. (ECF No. 25); Pls.' Br. in Opp'n to Def.'s Mot. for Prelim. Inj. (ECF No. 26).  Defendant did not file a reply in support of its motion.

## II.    LEGAL STANDARD

"A preliminary injunction 'is an extraordinary remedy . . . which should be granted only in limited circumstances.'"  *Holland v. Rosen*, 895 F.3d 272, 285 (3d Cir. 2018) (alteration in original) (quoting *Am. Tel. & Tel. Co. v. Winback & Conserve Program, Inc.*, 42 F.3d 1421, 1426–27 (3d Cir. 1994)).  The movant generally has the burden of persuasion to show that the remedy is warranted.  *Mazurek v. Armstrong*, 520 U.S. 968, 972 (1997) (quoting 11 Charles Alan Wright, Arthur R. Miller, & Mary Kay Kane, Federal Practice & Procedure § 2948, 129–130 (2d ed. 1995)).  That showing involves four factors: "(1) a reasonable likelihood of success on the merits; (2) irreparable harm to the applicant; (3) whether the denial of a preliminary injunction would injure the moving party more than the issuance of an injunction would harm the non-moving party; and (4) whether the grant of relief would serve the public interest."  *Holland*, 895 F.3d at 285–86.

The movant must show that the first two factors are present, after which the court engages in a balancing of all four factors to determine whether an injunction is appropriate:

> [A] movant for preliminary equitable relief must meet the threshold for the first two "most critical" factors: it must demonstrate that it can win on the merits (which requires a showing significantly better than negligible but not necessarily more likely than not) and that it is more likely than not to suffer irreparable harm in the absence of preliminary relief. If these gateway factors are met, a court then considers the remaining two factors and determines in its sound discretion if all four factors, taken together, balance in favor of granting the requested preliminary relief.

*Reilly v. City of Harrisburg*, 858 F.3d 173, 179 (3d Cir. 2017). Where a movant fails to show one or both of the "gateway factors," the injunction will not issue. *Cf. Doe v. Law School Admissions Council, Inc.*, 791 F. App'x 316, 321 (3d Cir. 2019) (affirming the denial of a preliminary injunction where plaintiff "did not meet her burden of showing that she has a likelihood of succeeding on the merits of her claim for testing accommodations").

Federal Rule of Civil Procedure 65 "does not make a hearing a prerequisite for ruling on a preliminary injunction." *Bradley v. Pittsburgh Bd. of Educ.*, 910 F.2d 1172, 1175 (3d Cir. 1990). This Court requires the party seeking an injunction to first support its motion with affidavits and other documentary evidence, after which the Court will determine whether a hearing is necessary. *See* Practices and Procedures of Judge Robert J. Colville ¶ III(C). "[A] district court is not obliged to hold a hearing when the movant has not presented a colorable factual basis to support the claim on the merits or the contention of irreparable harm." *Bradley*, 910 F.2d at 1175.

## III.    DISCUSSION

### A.    Defendant Has Shown a Reasonable Likelihood of Success on the Merits

Defendant has shown a reasonable likelihood of success on the merits. "The *sine qua non* of judicial review of an arbitration award is a heavy degree of deference to the arbitrator." *Akers Nat'l Roll Co. v. United Steel, Paper and Forestry, Rubber, Mfg., Energy, Allied Indus. & Serv.*

7

*Workers Int'l Union*, 712 F.3d 155, 165 (3d Cir. 2013).  "Unless the arbitrator's award fails to 'draw its essence' from the parties' CBA—such that there is 'absolutely no support at all in the record justifying the arbitrator's determination'—[the court] must enforce the award reached through arbitration." *United Steel Workers v. Merck & Co.*, No. 15-5374, 2017 WL 372142, at *1 (E.D. Pa. Jan. 26, 2017) (quoting *United Transp. Union Local 1589 v. Suburban Transit Corp.*, 51 F.3d 376, 379 (3d Cir. 1995)).  "[A]s long as the arbitrator's award draws its essence from the [CBA] and is not merely [the arbitrator's] own brand of industrial justice, the award is legitimate." *United Paperworkers Int'l Union, AFL-CIO v. Misco, Inc.*, 484 U.S. 29, 36 (1987).

Here, the arbitrator concluded that Catholic High Schools had violated the CBA by prolonging Grievant's suspension without just cause.  That fact weighs heavily in favor of Defendant's success.  On the other hand, Plaintiffs argue that Arbitrator Breen impermissibly "add[ed] to" the express terms of the CBA in violation of Section 6.16 when he found an implied time limit and just cause requirement in Section 3.4.  Plaintiffs cite several cases where the Third Circuit has vacated arbitration awards in similar circumstances.  *See, e.g.*, *Pa. Power Co. v. Local Union No. 272, Int'l Brotherhood of Elec. Workers*, 276 F.3d 174, 181 (3d Cir. 2001) (finding that the arbitrator's decision failed to draw its essence from the collective bargaining agreement where "[t]he arbitrator [wrote] into the contract a provision obligating the Company to pay its Union employees voluntary retirement benefits to which indisputably it never agreed and as to which the Union employees concededly were not entitled"); *Citgo*, 385 F.3d at 817 (finding that "the arbitrator simply substituted his own judgment for CITGO's and declared CITGO's zero tolerance provision unreasonable" and that the resulting opinion and award failed "to derive its essence from the CBA").

While Plaintiffs have presented a non-trivial—indeed, even strong—argument that they will ultimately succeed, Defendant does not need to show that its victory is certain to show likelihood of success for purposes of a preliminary injunction.  Defendant need only show that its chance of prevailing is "significantly better than negligible but not necessarily more likely than not." *Reilly*, 858 F.3d at 179.  While Defendants motion (filed without a supporting brief) just crosses that threshold, the Court concludes that it has done so.

### B.      Defendant Has Not Shown Irreparable Harm

While Defendant has established its likelihood of success, it fails to establish that it (or Grievant) will suffer irreparable harm.  As irreparable harm is one of the two "gateway factors" for which a showing by Defendant is required, this failure means Defendant's motion must be denied.

Defendant's motion invokes reputational harm and humiliation to Grievant but does not substantiate that harm with any evidence.   "Injury to reputation or goodwill is not easily measurable in monetary terms, and so often is viewed as irreparable."  11A Charles Alan Wright, Arthur R. Miller, & Marky Kay Kane, Federal Practice & Procedure § 2948.1 (3d ed. 2013). "However, as with all other forms of irreparable harm, the showing of reputational harm must be concrete and corroborated, not merely speculative."  *Trudeau v. Federal Trade Comm'n*, 384 F. Supp. 2d 281, 297 (D.D.C. 2005).  (finding that plaintiff failed to establish irreparable harm where he "offered no documents, statements, or testimonials demonstrating that he has suffered harm to his reputation as a result of the press release, or that such harm is certain to continue if the court does not impose an injunction"); *see also Reinhard v. Johnson*, 209 F. Supp. 3d 207, 220 (D.D.C. 2016) ("The Court will not credit Plaintiff's bald assertions regarding reputational harm and employment consequences without any support.").

Here, Defendant's passing request that Plaintiffs "be ordered to cease any and all conduct which might constitute harassment and humiliation of Grievant or which might result in damage to his reputation" is the closest that Defendant gets to addressing what irreparable injury will result in the absence of an injunction.  Mot. at 7.  Yet Defendant submitted no evidence that Plaintiffs have caused "damage to [Grievant's] reputation," that Plaintiffs have engaged in conduct "which might constitute harassment and humiliation," or that any such harm is likely to occur in the future. Defendant's failure to present evidence leaves the Court with only the arbitrator's factual findings; however, the arbitrator did not reach the issue of whether Grievant would suffer reputational harm.

Moreover, the two complaints accusing Grievant of sexual assault remain pending in state court.  An injunction requiring Plaintiffs to return Grievant to his former teaching position will not change the fact that those complaints remain pending, and Defendant has failed to address them. It is therefore not clear that a preliminary injunction would remedy any reputational harm that Grievant has already suffered.  Further, Grievant has been suspended with full pay and benefits— continued delay while the Court decides the merits of Plaintiffs' complaint will not likely result in direct monetary damages from wage loss or limitation of employment benefits.  Defendant has accordingly failed to meet its burden to show irreparable harm.  That failure is fatal to its motion.

IV.    **CONCLUSION**

For the foregoing reasons, Defendant's Motion for a Preliminary Injunction (ECF No. 18) will be **DENIED**.  An appropriate order will follow.

BY THE COURT:

*/s/Robert J. Colville*
Robert J. Colville
United States District Judge

DATED: August 30, 2022

cc: All counsel of record

10