IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| CATHOLIC HIGH SCHOOLS OF THE DIOCESE OF PITTSBURGH, INC., et al., <br><br> Plaintiffs, <br><br> v. <br><br> FEDERATION OF PITTSBURGH DIOCESAN TEACHERS, <br><br> Defendant. | 2:21-CV-1808-NR |

## MEMORANDUM OPINION

Before the Court are cross-motions for summary judgment involving a question of labor arbitration. The employer-school asks the Court to vacate an arbitration award issued in favor of the union and a teacher it represents, while the union asks the Court to confirm the award.

The underlying dispute involves a teacher who in 2018 was accused by a former student of engaging in sexual misconduct. ECF 37-5, p. 2. The school eventually placed the teacher on investigatory suspension as it and law enforcement investigated the accusations; but given the lack of evidence, the teacher was reinstated. *Id.* In 2019 and 2020, former students filed civil lawsuits, accusing the teacher of sexual misconduct; but the teacher was allowed to teach during this time. *Id.* at 3. Then, on February 12, 2021, the principal became aware of a Facebook post from Gemma Hoskins,[1] which demanded that the teacher be suspended until the cases were closed. *Id.* Four days later, the school placed the teacher on an investigatory suspension, with pay. *Id.* at 3-4. He was still on investigatory

---

[1] Gemma Hopkins was featured on a true crime Netflix series called "The Keepers." *Id.* at p. 3.

suspension as of October 22, 2021, when he filed an arbitration demand complaining about the delay. *Id.* at 8.

On November 30, 2021 the arbitrator issued a 16-page opinion and award, and found that the school violated the parties' collective bargaining agreement when it kept the teacher on essentially an indefinite suspension without providing evidence of wrongdoing, and so he ordered the teacher to be reinstated to the classroom. ECF 37-5. The school contends that the arbitrator overstepped his authority and that his decision did not draw its essence from the parties' agreement. The union argues that the award is grounded in the terms of the agreement, so it must be confirmed.

After carefully considering the parties' arguments and the relevant law – including the deferential standard of review – the Court will confirm the award.

## DISCUSSION & ANALYSIS

### I. Standard of review.

"In reviewing an arbitration award, courts do not sit to hear claims of factual or legal error by an arbitrator as an appellate court does in reviewing decisions of lower courts. Rather, arbitration awards enjoy a strong presumption of correctness that may be overcome only in certain limited circumstances[.]" *Major League Umpires Ass'n v. Am. League of Pro. Baseball Clubs*, 357 F.3d 272, 280 (3d Cir. 2004) (cleaned up). In other words, as the Third Circuit has explained, "[t]he *sine qua non* of judicial review of an arbitration award is a heavy degree of deference to the arbitrator." *Akers Nat'l Roll Co. v. United Steel, Paper and Forestry, Rubber, Mfg., Energy, Allied Indus. & Serv. Workers Int'l Union*, 712 F.3d 155, 165 (3d Cir. 2013). Under this deferential standard, a court will only vacate an arbitrator's award if it does not "draw[ ] its essence" from the parties' collective bargaining agreement. *United Paperworkers Int'l Union, AFL-CIO v. Misco, Inc.*, 484 U.S. 29, 36 (1987) ("[A]s long as the arbitrator's award draws its essence from the [CBA] and is not merely [the arbitrator's] own brand of industrial justice, the award is legitimate.").

The bar is very low. "[A] labor arbitrator's award [draws] its essence from the collective bargaining agreement if the interpretation can in any rational way be derived from the agreement, viewed in the light of its language, its context, and any other indicia of the parties' intention." *Akers*, 712 F.3d at 160 (citation omitted). "[I]f an arbitrator is even arguably construing or applying the contract and acting within the scope of his authority, the fact that a court is convinced he committed serious error does not suffice to overturn his decision." *Id.* (citation omitted). In essence, courts "will not overturn an arbitration award unless we conclude there is a manifest disregard of the agreement, totally unsupported by the principles of contract construction and the law of the shop." *Indep. Lab'y Employees' Union, Inc. v. ExxonMobil Rsch. & Eng'g Co.,* 11 F.4th 210, 215 (3d Cir. 2021) (cleaned up).

## II. The agreement.

The collective bargaining agreement between the union and employer contains two disciplinary provisions that are salient here:

> 3.3: The right to hire, suspend, discharge or otherwise discipline a teacher for violation of rules *or **just cause*** shall be exercised at the local level according to the policies established by the High School and Department. None of these policies may contradict or contravene any provision of this Agreement.
>
> 3.4: In certain situations, the welfare of the students or the integrity of the High School may require the suspension of a teacher or employee. In such cases it will be the prerogative of the High School, after consultation with the Superintendent and Federation, to decide whether suspension with or without pay is necessary or appropriate. The decision of the High School will be final pending the completion of any grievance procedure pursued on the merits.

ECF 37-4, pp. 6 (emphasis added).

### III. The arbitrator's award draws its essence from the parties' collective bargaining agreement.

The school argues that the suspension of the accused teacher falls under Article 3.4 of the agreement because it was an "investigatory suspension," rather than a "disciplinary suspension," which falls under Article 3.3. *See* ECF 39, p. 3. According to the school, this is a critical difference because under the terms of the CBA, an Article 3.3 disciplinary suspension requires a showing of "just cause," but an Article 3.4 investigatory suspension has no similar limiting language. Instead, the school argues that it has discretion under Article 3.4 to suspend a teacher during an investigation, including doing so indefinitely. As such, the school argues that the arbitrator erred by essentially adding a "just cause" requirement in Article 3.4, and then finding that the school didn't meet it. *Id.*

If this were on a *de novo* review, the Court would be inclined to agree with the school. But the standard of review is dispositive here, and the Court finds that there is some rational basis in the contract for the arbitrator's decision.

In his award, the arbitrator acknowledged that "Article 3, Section 3.4 does not expressly state a specific time limit." ECF 37-5, p. 13. Still, he concluded that "[w]hen the time limit was exceeded this suspension in fact became disciplinary and subject to a just cause analysis[.]" *Id.* at 14. He arrived at this conclusion considering a confluence of various provisions, through an "interpretation of Article 3, Purpose and Scope, Section 3.4 of the Agreement in conjunction with the just cause provisions of the Agreement set forth in Article 3, Section 3.3 and Article 10, Tenure, Section 10.4 of the Agreement." *Id.* at 13.

In other words, the arbitrator read Article 3.3 and 3.4 together, finding that when an investigatory suspension unjustifiably lasts too long, it becomes a form of discipline, thereby triggering Article 3.3's "just cause" requirement. *See id.* at 14 ("When the time limit was exceeded this suspension in fact became disciplinary and

4

subject to a just cause analysis which requires that the disciplinary action be fair and equitable."). And the arbitrator found, based on the specific facts here, that this disciplinary action (*i.e.*, the excessively long suspension based on a delay in the investigation) was not supported by just cause.

The arbitrator's interpretation is grounded in language of the contract in a rational way. The interpretation reads two adjacent contractual provisions in Article 3 in harmony. *See* Antonin Scalia & Brian Gardner, Reading Law 180 (2012) (describing harmonious-reading canon and noting that "there can be no justification for needlessly rendering provisions in conflict if they can be interpreted harmoniously."); *see also Brentwood Med. Assocs. v. United Mine Workers of Am.*, 396 F.3d 237, 241 (3d Cir. 2005), as amended (Mar. 17, 2005) (arbitration award draws essence from CBA if based on "language" and "context" of agreement).

Moreover, the arbitrator's interpretation doesn't contradict any other express terms, and, despite what the school says, it doesn't add any additional terms. These are usually the scenarios where arbitrators' awards are overturned, and they are not present here. *See, e.g.*, *Exxon*, 11 F.4th at 218 (explaining that the court in *Monongahela Valley Hosp. Inc. v. United Steel Paper & Forestry Rubber Mfg. Allied Indus. & Serv. Workers Int'l Union AFL-CIO CLC*, 946 F.3d 195, 198 (3d Cir. 2019), vacated an award because it "manifested plain disregard for the CBA and ignored clear intentions of the parties" by adding an "operational need" requirement "notwithstanding the Hospital's reservation of *exclusive rights*" (emphasis in original)); *Jersey Nurses Econ. Sec. Org. v. Roxbury Med. Grp.*, 868 F.2d 88, 89-90 (3d Cir. 1989) (vacating an award that "order[ed] the incorporation of…language to replace language found to be unclear," thereby "cho[osing] a new contract provision from among competing proposals by the parties, rather than interpreting the existing agreement").

For example, the CBA doesn't define "discipline" in a specific way; it doesn't expressly state that the length of an investigatory suspension is in the sole and exclusive discretion of the school; and it doesn't say that the school shall have the final, unchallengeable ability to classify a suspension as either investigative or disciplinary. Therefore, unlike cases where an arbitrator's award is vacated for straying too far from the contract by contradicting express terms, the award here didn't hit such land mines. *Compare Pennsylvania Power Co. v. Loc. Union No. 272, Int'l Bhd. of Elec. Workers, AFL-CIO*, 276 F.3d 174, 179 (3d Cir. 2001) (vacating award where arbitrator "wrote into the contract that the Plant production and maintenance employees shall have the same benefits as the supervisory employees," even though "the Agreement specifically exclude[d] supervisory employees from its terms").

While the school here quibbles over whether the investigation was really so long as to become a form of disciplinary action, that is a factual finding that the Court cannot second guess.[2] *Citgo Asphalt Refin. Co. v. Paper, Allied-Indus., Chem. & Energy Workers Int'l Union Loc. No. 2-991*, 385 F.3d 809, 816 (3d Cir. 2004) ("Findings of fact and inferences to be drawn therefrom are the exclusive province of the arbitrator. It is not the court's role to draw inferences that the factfinder did not." (cleaned up)); *United Paperworkers Int'l Union, AFL-CIO v. Misco, Inc.*, 484 U.S. 29, 36, 39 (1987) ("The courts are not authorized to reconsider the merits of an award even though the parties may allege that the award rests on errors of fact[.] … No dishonesty is alleged; only improvident, even silly, factfinding is claimed. This is

---

[2] For the arbitrator, the length of time the investigation dragged on played a pivotal role in the award. ECF 37-5, at p. 15 ("[I]t is significant that from June of 2018 to the present…neither A.Y.G. or C.M. or the Employer have produced any evidence of wrongdoing on the part of [the teacher]. Under those circumstances, the Employer violated the Agreement by keeping the Grievant on an indefinite investigatory suspension with no end in sight.").

hardly a sufficient basis for disregarding what the agent appointed by the parties determined to be the historical facts.").

Because the arbitrator's award draws its essence from the terms of the CBA, the Court is constrained to confirm the award.[3]

## **CONCLUSION**

For the foregoing reasons, the arbitration award is hereby **CONFIRMED**. Accordingly, Plaintiffs' motion for summary judgment is **DENIED**, and Defendant's motion for summary judgment is **GRANTED**. By separate order, final judgment will be entered in favor of Defendant. Defendant's request for attorneys' fees is denied without prejudice to raising in a post-judgment motion pursuant to Rule 54. *See* ECF 20.

DATE: August 17, 2023                                        BY THE COURT:

/s/ *J. Nicholas Ranjan*
United States District Judge

---

[3] The Court can't help but comment that the better reading of the CBA is that Article 3.4 probably does allow for indefinite investigatory suspensions, at least in theory. Built into Article 3.4 is an obligation for the employer and union to confer on whether the suspension is with or without pay. *See* Article 3.4 ("In such cases it will be the prerogative of the High School, after consultation with the Superintendent and Federation, to decide whether suspension with or without pay is necessary or appropriate."). This "consultation" provision would appear to be the natural check on the risk associated with an indefinite suspension. If the parties negotiated an investigatory suspension with pay, the natural incentive would be for the school to expedite the investigation. And if the parties negotiated a suspension without pay, as part of that bargain, they could at least, ex ante, establish the parameters and time frame of the investigation. This case, though, is unusual because the school seemed to be content in paying the teacher not to work for a long time (he's apparently still not working, *see* ECF 44, p. 2). This is at odds with what would appear to be rational economic behavior. In the end, while the Court may read the agreement this way, it cannot say that the arbitrator's alternate interpretation was not based in the contract. And that's ultimately what matters. *See News Am. Publications, Inc. Daily Racing Form Div. v. Newark Typographical Union, Loc. 103*, 918 F.2d 21, 24 (3d Cir. 1990) ("[F]ederal labor law elevates labor arbitrators to 'an exalted status.'" (citation omitted)).